**SUNDSVALLSBANKEN, Plaintiff,**

**v.**

**FONDMETAL, INC. and Robern International, Inc., Defendants and Third-Party Plaintiffs.**

**No. 85 Civ. 1453 (RWS).**

United States District Court, S.D. New York.

Nov. 27, 1985.

Carey & Deinoff, New York City, for plaintiff; Michael Q. Carey, of counsel.

Lerich & Lerich, New York City, for defendants and third-party plaintiffs; Hyman D. Lerich, Eric Moss, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Sundsvallsbanken ("SVB") brings this motion for partial summary judgment under Rule 56, Fed.R.Civ.P., to collect on a renewal promissory note executed by defendants Fondmetal, Inc. and Robern International, Inc. (collectively "Fondmetal/USA") in favor of SVB. Fondmetal/USA opposes the motion for partial summary judgment claiming that it is entitled to pursue additional discovery under Rule 56(f) of the Federal Rules of Civil Procedure, and cross-motions for an order pursuant to Rule 37(d) imposing sanctions against SVB for refusal to submit to discovery in this action. For the reasons set forth below, SVB's motion for partial summary judgment on the note is granted, and Fondmetal/USA's motion for sanctions is denied.

### Facts

The following facts are undisputed except as noted.

This action arises from the division of the business affairs of defendants and their principal Bernt C. Rathaus ("Rathaus") from those of Fondmetall/AB, a Swedish company, and its principal Anders J. Lofberg ("Lofberg"). In order to terminate and dissolve their joint venture in 1984,

Rathaus, Lofberg, SVB and to a lesser extent Skandinaviska Enskilda Banken ("SEB") entered into a complex series of agreements. On June 7, 1984 Rathaus sold Lofberg all the shares of common stock which Rathaus owned in Fondmetall/AB, the Swedish company. On the same day, Lofberg and Rathaus agreed that Fondmetal/USA owed Fondmetall/AB $1,400,000.00 and entered into a Settlement and Security agreement ("Settlement Agreement"). The agreement provided that Fondmetal/USA would pay Fondmetall/AB $1,400,000.00, as evidenced by a promissory note ("Note A") which was simultaneously executed and delivered with the agreement and as part consideration for the redirection of the amount which Fondmetall/AB claimed it was owed. Fondmetall/AB received a security interest in and lien upon all of Fondmetal/USA's accounts and chattel papers. The Settlement Agreement also provided that Fondmetall/AB could assign its rights under the agreement, and all the rights and obligations under the agreement would inure to the benefit of and be binding upon the assignee. Also on June 7, 1984, the parties executed two Limited Release and Indemnification Agreements ("Indemnification Agreements").

In the first indemnification, Fondmetall/AB and Lofberg released Fondmetal/USA and Rathaus from certain obligations and claims, and in turn they agreed to indemnify Fondmetall/AB and Lofberg from acts of Rathaus, the companies or officers up to June 7, 1984. In the second indemnification agreement, Fondmetal/USA and Rathaus released Lofberg and Fondmetall/AB from certain obligations and in return Lofberg and Fondmetall/AB agreed to indemnify Fondmetal/USA and Rathaus with respect to activities of the Swedish company or its officers up to June 7, 1984.

Finally, on June 7, 1984, Fondmetall/AB assigned Note A to SVB, a note which was to be paid in four installments beginning August 1, 1984, ending July 1, 1985. Simultaneously, Fondmetall/AB also assigned its rights under the Settlement

Agreement to SVB. Each assignment was agreed to by Fondmetal/USA, and each assignment provided a conditional indemnification agreement for the benefit of Fondmetal/USA which by its terms indemnified the companies against any claim which SEB might make against them in relation to the Fondmetall/AB default:

> ... in the performance of a loan granted by [SEB] to [FONDMETALL] in the principal amount of U.S. $290,000. The agreement by [SVB] to hold [FONDMETAL/USA] harmless shall not include any other claim which [SEB] may have against [FONDMETAL/USA] for any other reason whatsoever.
>
> The agreement by [SVB] to hold [FONDMETAL/USA] harmless as set out above shall not entitle them to a setoff against or in any way limit the [Fondmetal/USA] obligations under the Promissory Note or the Assignment to [SVB] by [Fondmetall] of all its rights under said Promissory Note ...,"

Neither assignment provides for personal indemnification of Rathaus. (Exh. D, Rathaus Affidavit of 7/7/85 Doc. # 1 & 2).

After the completion of these agreements, Fondmetal/USA began making payments to SVB under Note A.[1] However, in October of 1984, Rathaus informed SVB that he would be unable to meet the payment schedule under Note A, and on October 31, 1984 the parties entered into an amended Settlement Agreement and a renewed promissory note ("Note B"). Similar events resulted in another amended Settlement Agreement and renewed promissory note ("Note C") on January 24, 1985. The amount of Note C was $450,000.00, Fondmetal/USA having paid $950,000.00 pursuant to Notes A and B. These amendments altered the payment schedules for the indebtedness to Fondmetal/USA's benefit, but provided for the immediate accrual of interest on all principal amounts outstanding under the renewal notes. Fondmetal made no payment on Note C, and SVB commenced this suit to recover the monies due.

### Discussion

All doubts must be resolved and all reasonable inferences must be drawn in favor of the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2d Cir.1982). This Circuit has long endorsed a policy of allowing the development of a full factual record through trial of the issues presented, a policy which is limited by the grant of summary judgment. *See Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir.1975).

■ The burden faced by the moving party should not, however, be made so insurmountable as to vitiate summary judgment relief. If the opponent to the summary judgment motion fails to allege that there are substantial facts in dispute, his reliance on an unsubstantiated denial of the accuracy of the movant's affidavits is insufficient to controvert a motion for summary judgment. *Project Release v. Provost*, 722 F.2d 960, 968 (2d Cir.1983); *see WIXT Television, Inc. v. Meredith Corp.*, 506 F.Supp. 1003 (N.D.N.Y.1980).

■ Fondmetal/USA has interposed legal defenses against the collection on the promissory note, and has requested postponement of the motion pursuant to Rule 56(f) asserting the need for added discovery of information under SVB's control. Rule 56(f) requires the court to ensure that the parties have a reasonable opportunity to make their record complete before ruling on a motion for summary judgment.

---

**1.** The parties are in dispute over what reasons were given for the inability to meet the Note A payment schedule. While Rathaus and SVB agree that Rathaus mentioned that he suspected Lofberg of unlawfully converting accounts receivable of Fondmetal/USA, Rathaus claims that he offered this conversion as the reason why he could not make payments. SVB, however, submitted a telex of October 29, 1984 from Rathaus to Mr. Thord Soderlund (SVB's Executive Vice President), explaining that the inability to pay was the result of a delayed shipment from China. (Affidavit of Pelle Deinoff, Exhibit 2).

*Berne Street Enterprises v. American Export Isbrandtsen Co.*, 289 F.Supp. 195 (S.D.N.Y.1968). However, Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the Rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative. *Quaker Chair Corp. v. Litton Business Systems, Inc.*, 71 F.R.D. 527, 533 (S.D.N.Y.1976). "A 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 107 (2d Cir.1981). Fondmetal/USA's three major opposition claims will be considered in light of these summary judgment and Rule 56(f) standards.

**Conversion claim**

Fondmetal/USA claims that SVB is not entitled to collect on the promissory note because it assisted in, or at least had knowledge of, an alleged conversion of certain of Fondmetal/USA's European accounts receivable by Rathaus' estranged partner Lofberg and Fondmetall/AB. According to Rathaus, SVB should bear responsibility for the conversion because it was aware that the conversion was taking place and knew that the accounts receivable were the assets which Fondmetal/USA was liquidating to pay the loan installments. Rathaus charges that SVB was Lofberg's partner in the negotiation of Note A and the related documents, including the Settlement Agreement, which provided in part:

4. In consideration of the reduction of the amount claimed by [Fondmetall/Sweden], each Debtor [e.g., Fondmetal/USA and Robern] hereby grants to [Fondmetall/Sweden] *a continuing security interest in and lien upon all of the Debtor's accounts and chattel paper now or hereafter existing or acquired* and all proceeds and products thereof (the "Collateral"), as security for the due payment of all of the indebtedness of the

Debtors to [Fondmetall/Sweden], up to a maximum amount of $1,400,000.

(Rathaus Reply Affidavit of 9/23/85 (emphasis supplied)).

According to Fondmetal/USA, this provision in the original Settlement Agreement, subsequently adopted by SVB in the assignments and revisions resulting in Note C, demonstrates that SVB knew that these accounts receivable were security for the notes and were the source of payment on the Notes. Rathaus also contends that if permitted to continue discovery along this vein, he may demonstrate that SVB was a co-tortfeasor in the diversion of the accounts receivable.

■ Even viewed in a light most favorable to Fondmetal/USA, the party opposing the motion, Fondmetal/USA's conversion defense fails to assert a legal bar to the entry of summary judgment on the note and could only support a request for increased discovery on a conversion counterclaim against SVB and Lofberg. Fondmetal/USA has not established that SVB had any duty to protect these receivables, that SVB interfered with Fondmetal's collection of the receivables, or that it would make any difference whatsoever to collection on the note if they had been able to establish such a breached duty.

The above quoted passage in the Security Agreement explicitly refers to a security interest in "all of the Debtor's accounts and chattel paper," and does not earmark any specific account, European or otherwise, as the security for the undertaking. Assuming *arguendo*, that Fondmetal/USA had even claimed that there was such a specific understanding about the collateral, it would not change the fact that this passage does not create a duty upon SVB or any other party to preserve the underlying accounts receivable. Because SVB was not the beneficiary of this alleged conversion of the accounts receivable it works as much to SVB's disadvantage as it does to Rathaus' disadvantage, as SVB is the lien creditor being deprived of its security interest in the accounts. While an alleged con-

version by either Lofberg or SVB might be a defense against SVB's collection on the Settlement Agreement, it does not establish a defense as to collection on Note C, an independent promissory obligation. The New York Courts have enforced this separation between actions against holders of promissory notes and actions asserting fraud in connection with the security given in exchange for these notes. *See Reid v. Budget Credit*, 5 Misc.2d 949, 162 N.Y.S.2d 750, 752 (Sup.Ct., Kings Cty., 1957) ("The wage assignment contract was purportedly given as collateral security for the payment of an alleged promissory note. The respondent may be found to be a holder in due course of such a note. But as regards its rights under the assignment of wage contract, the assignee takes subject to any defenses or infirmities thereof since it is not a negotiable instrument"). *Accord, Edwards v. Budget Credit*, 8 Misc.2d 897, 167 N.Y.S.2d 583, 586 (Sup.Ct., Kings Cty., 1957); *Cajuste v. Budget Credit, Inc.*, 5 Misc.2d 948, 162 N.Y.S.2d 748 (Sup.Ct., Kings Cty., 1957).

Furthermore, Fondmetal/USA has not produced written evidence other than the Settlement Agreement that it was relying on the payments of these accounts receivable to meet its obligations on the Note. SVB has produced a telex from Fondmetal/USA stating that the basis for its failure to meet the payment schedule under Note B was a delayed shipment of goods without reference to the alleged conversion.

In short, SVB's rights under the promissory Note C are independent of any conversion claim against SVB based on the security agreement lien provisions,[2] and Fondmetal/USA has not cited any authority for the proposition that the security agreement pertains to any specific accounts receivable, that anyone had any duty to protect those receivables, or that Fondmetal has a basis for believing that SVB was aware of this alleged conversion.

### Indemnification against claims of SEB

Fondmetal/USA's second defense against summary judgment is that SVB breached its duty to indemnify Rathaus against claims deriving from a guaranty which Rathaus executed on an account maintained by Fondmetall/AB at SEB.

However, neither of the two indemnification agreements negotiated in connection with the assignment of the note and security agreement purports to indemnify Rathaus, but extends by their terms only to the liabilities of Fondmetal, Inc. and Robern International. In addition, they indemnify these companies only as to claims made against a loan granted by SEB in the principal amount of $290,000.00 and not an action on the Overdraft Facility account which Rathaus personally guaranteed[3] and upon which he is being sued upon as guarantor.

Rathaus contends that an omission of his name from the language of this indemnity was a "drafting error" and he has submitted copies of his attorney's letters to SVB requesting the correction of this error. SVB counters that the personal guaranty of Rathaus was specifically excluded from the initial release and indemnity agreement, indicating that the parties were very aware of the two distinct Fondmetall/AB accounts at SEB, and that they did not intend to bring the Overdraft Checking Facility into the scope of the indemnity provisions:

*Limited Release and Indemnification Agreement*

"1) Except for the full performance of any and all of the terms and conditions of a certain agreement ... and for the enforcement of any claims that may be

---

**2.** For the purposes of this motion, Fondmetal/USA's assertion is accepted to the effect that despite the repeated assignments and renewals of the promissory notes, SVB stands in the shoes of Lofberg for the purposes of the Security Agreement negotiated in conjunction with Note A.

**3.** Fondmetall/AB maintained two accounts at SEB, only one of which was guaranteed by Rathaus.

made under a personal guaranty from Bernt C. Rathaus to SE Banken, Sweden, for the debt of Fondmetall/AB, ..." (Rathaus Affidavit 7/7/85, Exhibit B, doc. 2) (Limited Release and Indemnification Agreement).

■ However, even if SVB *had* breached such a duty to indemnify Rathaus, it does not affect Fondmetal/USA's obligation under Note C. The indemnity agreement itself provides that "The agreement by [SVB] to hold [Fondmetal/USA and Robern International] harmless as set out above shall not entitle them to a setoff against or in any way limit [Fondmetal, Inc. and Robern International's] obligations under the Promissory Note or the Assignment to [SVB] by [Fondmetall/AB] of all its rights under said Promissory Note ...," (Rathaus Affidavit 7/7/85 Exhibit D, Docs. 1 & 2). The claim on this indemnity agreement thus cannot block summary judgment on Note C against Fondmetal/USA because even if established it bears no relationship to the obligation under the promissory note.

**Holder in due course**

In another attempt to forge a legal link between the allegedly unlawful acts of Lofberg and his company and SVB, Fondmetal/USA charges that SVB does not qualify as a holder in due course under section 3–302 of the Uniform Commercial Code, and is thus subject to all of the claims and defenses against payment on the note available pursuant to section 3–306 [4] of the Code, in this case the conversion and indemnification claims discussed above.

However, a survey of the requirements for holder in due course status indicates that SVB has met the prerequisites set out in 3–302:

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the party of any person.

■ Fondmetal/USA first claims that the Note was not taken "for value" because Fondmetall/AB assigned the note to SVB in satisfaction of an extant debt. Whatever the merits of this argument, it is one which relates to Note A, and not Note C, the one at issue in this motion. Note C was negotiated between SVB and Fondmetal/USA and was supported by independent consideration. It is undisputed that SVB liberalized the payment schedule on the remainder of the funds due on the note when Note C was executed, and declined to place Fondmetal/USA in default on the payments under Note B (Deinoff Affidavit, 9/12/85, Exhibit B).

■ Fondmetal/USA also asserts that SVB did not take the note in "good faith" because Rathaus had notified SVB that he had suspicions that Fondmetall/AB was converting the European accounts receivable of Fondmetal/USA. Good faith under Code section 3–302 is governed by its definition in section 1–201(19) which provides:

(19) "Good Faith" means honesty in fact in the conduct or transaction concerned.

Under this subjective standard it does not matter whether a reasonable person would have known that something in the transaction was amiss, but merely that the holder did not know that the transaction was suspect. *Chemical Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 432 N.Y.S.2d 478, 411 N.E.2d 1339 (1980). Fondmetal/USA asserts that because Rathaus notified an SVB officer that he had suspicions of conversion before the execution of the note that this was enough to convert acceptance of Note

---

**4.** Section 3–306 provides in relevant part:
Unless he has the rights of a holder in due course any person takes the instrument subject to
(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and
(c) the defenses of want or failure of consideration, non-performance of any condition precedent, non-delivery, or delivery for a special purpose (Section 3–408); and ...

C into an act of bad faith. However, the facts surrounding the execution of Note C cannot support a charge of bad faith. As will be discussed under the question of notice *infra,* notice of defenses against an instrument means actual subjective knowledge of defenses, and not the mere existence of suspicious circumstances. *Travelers Indemnity Company v. American Express Co.,* 559 F.Supp. 452 (S.D.N.Y.1983).

■ When Note B was extinguished and Note C was executed, Rathaus did not assert this alleged conversion as an excuse for non-payment of the note which weakens his claim that the notice was sufficient to make SVB an actor in bad faith. Furthermore, SVB renegotiated the note at the *behest* of Rathaus and Fondmetal/USA, and granted this extension of time to accommodate a payor who had already paid $950,000.00 of a $1,400,000.00 loan. Fondmetal/USA has cited no authority which makes it bad faith to renegotiate a promissory note rather than place the payor in default.

■ Related to this charge of bad faith is Fondmetal/USA's belief that this same notice of Lofberg's conversion is notice of a defense or claim under 3–302(1)(c). This contention ignores the wording of the statute and its definitional counterpart in section 3–304. Section 3–302(1)(c) speaks of notice of any "defense against or claim *to it* on the part of any person." (emphasis supplied), meaning a defense on the instrument in question, and not on the collateral Security Agreement. Section 3–304(1)(b) reinforces the nature of this notice of a defense by providing:

(1) The purchaser has notice of a claim or defense if ...

(b) the purchaser has notice that the obligation of any party is voidable in whole or in part, or that all parties have been discharged.

Official Comment 3 to this section provides that the inclusion of the word "voidable" is meant to restrict the provision to notice of a defense which will permit any party to avoid his original obligation on the instrument as distinguished from a setoff or counterclaim. Thus Rathaus' notice to SVB that Lofberg might have breached the provisions of the Security Agreement would not be notice of a defense or claim pursuant to sections 3–304 and 3–302 of the Code. Although Fondmetal/USA can maintain a counterclaim based on these charges, its existence will not deprive SVB of its status as a holder in due course and will not prevent the entry of summary judgment. *See Maglich v. Saxe, Bacon & Bolan, P.C.,* 97 A.D.2d 19, 468 N.Y.S.2d 618 (App.Div. 1st Dept.1983).

### Discovery Sanctions

■ Fondmetal/USA has moved pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order imposing sanctions on SVB for failure to respond expeditiously to discovery requests. Sanctions are unwarranted in this case in view of the circumstances surrounding the SVB's summary judgment motion. On June 12, 1985, this court provided for discovery to be completed by November 6, 1985. However, on July 15, 1985, SVB filed a motion for summary judgment, staying all discovery pending the resolution of this motion. In view of the fact that Fondmetal/USA has failed to show that it lacks any relevant information within SVB's control for the purposes of its Rule 56(f) claim, sanctions for failure to produce such information are not indicated. Of course, Fondmetal/USA will be able to undertake continued discovery with regard to its counterclaims against SVB and third party defendants Lofberg and Fondmetall/AB.

Fondmetal/USA has not disputed that it executed an unconditional promissory note in favor of SVB and that it has defaulted on the payments due under such note. Because no material dispute of those facts exists, and no further discovery under Rule 56(f) is warranted, SVB is entitled to partial summary judgment on Note C.

Submit judgment on notice.

IT IS SO ORDERED.