**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SALT LAKE CITY, Plaintiff and Appellant,**

v.

**GUMP & AYERS REAL ESTATE, INC., and Air Terminal Gifts, Inc., Defendants and Respondents.**

No. 880331–CA.

Court of Appeals of Utah.

April 4, 1989.
Certiorari Granted June 7, 1989.

John W. Lowe, Salt Lake City, for plaintiff and appellant.

Walter P. Faber, Jr., Salt Lake City, for defendants and respondents.

Before DAVIDSON, BILLINGS and GARFF, JJ.

## OPINION

BILLINGS, Judge:

First Federal Savings & Loan Association of Salt Lake City ("First Federal")

brought suit against Air Terminal Gifts, Inc. ("Air Terminal") on a promissory note executed by Air Terminal and payable to Sunayers Limited Partnership ("Sunayers"). The Air Terminal note had been assigned to First Federal by Gump & Ayers Real Estate, Inc. ("Gump & Ayers"), the general partner of Sunayers. After an evidentiary hearing, the trial court found the note was not negotiable and First Federal was not a holder in due course. First Federal takes exception to both rulings, claiming it is entitled to enforce the note notwithstanding any claims or defenses of Air Terminal. We agree, and reverse and remand this case for further proceedings consistent with our opinion.

## FACTS

The facts are not in dispute. Sunayers was developing a condominium project in St. George, Utah called Sunflower. On June 5, 1984, Air Terminal invested $200,000 in the Sunayers Limited Partnership by paying $75,000 in cash and executing a $125,000 promissory note ("the Air Terminal note") secured by a Purchase and Security Agreement. The note provides: "This Note is secured by that certain Purchase and Security Agreement date June ——, 1984. Reference is made to the Purchase and Security Agreement for additional rights of the holder hereof."

On June 27, 1984, Gump & Ayers, the general partner of Sunayers, executed a promissory note in the amount of $100,000 ("the Gump & Ayers note") payable to First Federal. Gump & Ayers assigned the Air Terminal note as further security for the loan to Sunayers. The proceeds from the Gump & Ayers note were to be used by Sunayers for debts incurred in developing the Sunflower project, one of which was described as the "Morse Shortfall." Morse was the contractor on the Sunflower project, and part of the Morse Shortfall was an $18,500 debt due Gump & Ayers.

Air Terminal claims the language in its note referring to the Purchase and Security Agreement for "additional rights of the holder hereof" makes the note non-negotiable. Air Terminal further claims that even if the note is negotiable, First Federal is not a holder in due course because it took the note with notice of claims made by and defenses of Air Terminal. Specifically, Air Terminal claims First Federal knew a portion of the proceeds from the loan would be used to pay Gump & Ayers as part of the Morse Shortfall. According to the Purchase and Security Agreement, Air Terminal was to be indemnified by Sunayers and Gump & Ayers from any obligations arising from the Morse Shortfall.

There are two issues on appeal. First, is the Air Terminal note a negotiable instrument? Second, is First Federal a holder in due course of the Air Terminal note?

Since our task is to interpret the language of the Air Terminal note to determine if it is negotiable, and on undisputed facts, determine if First Federal is a holder in due course, we accord the trial court's conclusions no deference but review for a correction of error. *See, e.g., Cornish Town v. Koller,* 758 P.2d 919, 921 (Utah 1988).

## NEGOTIABILITY

■ The trial court held the Air Terminal note was not a negotiable instrument because the note referenced "additional rights" provided for in the Purchase and Security Agreement thereby creating additional powers and promises outside those provided in the note itself. We must decide whether the "reference" in the Air Terminal note to the Purchase and Security Agreement "for additional rights" creates an additional "promise" or "power" under controlling statutory language which renders the note non-negotiable.

When determining negotiability, only the instrument in question should be examined. *Calfo v. D.C. Stewart Co.,* 717 P.2d 697, 700 (Utah 1986). *See also First State Bank at Gallup v. Clark,* 91 N.M. 117, 570 P.2d 1144, 1146 (1977). In order for a writing to be a negotiable instrument, it must "contain an unconditional promise or order to pay a sum certain in money and *no other promise,* order, obligation or *power given by the maker* or drawer except as

authorized by this chapter." Utah Code Ann. § 70A–3–104(1)(a) (1988) (emphasis added). A promise or order, otherwise unconditional, does not become conditional simply because the instrument "*refers* to or states that it *arises out* of a separate agreement or refers to a separate agreement for rights as to prepayment or acceleration...." Utah Code Ann. § 70A–3–105(1)(c) (1988) (emphasis added). In contrast, a promise or order is conditional if the instrument "states that it is *subject to or governed by* any other agreement." Utah Code Ann. § 70A–3–105(2)(a) (1988) (emphasis added). Negotiability is not, however, affected by "a statement that collateral has been given to secure obligations either on the instrument or otherwise of an obligor on the instrument or that in the case of default on those obligations the holder may realize on or dispose of the collateral...." Utah Code Ann. § 70A–3–112(1)(b) (1988).

Thus, the issue is whether the Air Terminal note simply *refers* to or is *governed by* the Purchase and Security Agreement. The language of the relevant clause, providing that "reference is made to the Purchase and Security Agreement" persuades us that the note is negotiable under § 70A–3–105(1)(c).

Cases from other jurisdictions interpreting similar provisions support our conclusion. *See, e.g., Third Nat'l Bank in Nashville v. Hardi–Gardens Supply of Illinois,* 380 F.Supp. 930, 938 (M.D.Tenn.1974) (an obligation is not made conditional because the instrument refers to or states that it arises out of a separate agreement); *Federal Factors, Inc. v. Wellbanke,* 241 Ark. 44, 406 S.W.2d 712, 713 (1966) ("The mere reference to the transaction giving rise to the instruments does not affect negotiability."); and 5 R. Anderson, *Uniform Commercial Code* § 3–105:12 at 236 (3d ed. 1984) ("The fact that a reference to collateral security for commercial paper may be ineptly worded does not impair negotiability when the sense of the provision is that something is added rather than subtracted from the obligation of the commercial paper.") (citing *First Nat'l City Bank v. Valentine,* 62 Misc.2d 719, 309 N.Y.S.2d 563 (1970)).

Based on the foregoing, we conclude the Air Terminal note is a negotiable instrument.

## HOLDER IN DUE COURSE

██ A holder in due course is "a holder who takes the instrument for value; and in good faith; and without notice that it is overdue or has been dishonored or of any *defense against* or claim to it on the part of any person." Utah Code Ann. § 70A–3–302(1)(c) (1988) (emphasis added). Air Terminal claims First Federal is not a holder in due course of the Air Terminal note for two reasons. First, it claims First Federal had notice that Air Terminal's obligation was voidable in whole or in part under Utah Code Ann. § 70A–3–304(1)(b) (1988). Second, Air Terminal claims First Federal had notice of a claim against the note under Utah Code Ann. § 70A–3–304(2) (1988).

Section 70A–3–304(1)(b) states, with our emphasis, a "purchaser has notice of a claim or defense if ... the purchaser has notice that the obligation of any party is *voidable* in whole or in part, or that all parties have been discharged." Under the Purchase and Security Agreement, Air Terminal was to be indemnified for any reduction in capital or income based on claims against Sunayers due to the Morse Shortfall. Air Terminal claims that because First Federal had notice of this provision, a fact not in dispute, and the loan to Sunayers which involved the assignment of the Air Terminal note was to pay the Morse Shortfall, Air Terminal's obligation to pay was voidable, thus, First Federal is not a holder in due course.

In *Sundsvallsbanken v. Fondmetal, Inc.,* 624 F.Supp. 811 (S.D.N.Y.1985), this precise issue was addressed. The payee bank brought an action to collect on a renewal promissory note. An indemnity agreement executed in connection with the note, contained a provision by which the payee bank had a duty to indemnify the maker against certain claims. The New York District Court held that the duty to

indemnify the makers from certain claims did not preclude collection on the note. In so holding, the court declared that any claim on the indemnity provision could be asserted as a counterclaim, but the provision did not permit the maker to "avoid" the note's obligation. *Id.* at 818. In support of its holding, the court stated, "[the] ... inclusion of the word 'voidable' [in U.C.C. § 3–304(1)(b) ] [1] is meant to restrict the provision to notice of a defense which will permit any party to avoid his original obligation on the instrument as distinguished from a setoff or counterclaim." *Id.* (referring to the Official Comments to the Uniform Commercial Code).

Similarly, the Purchase and Security Agreement gives Air Terminal the right to indemnification from Sunayers for any reduction in capital of the Sunayers Limited Partnership resulting from the Morse Shortfall, but it does not render Air Terminal's obligation on the note voidable under § 70A–3–304(1)(b). Instead, Air Terminal's right to partial indemnification from Sunayers is independent of its obligation to pay on the Air Terminal note. Air Terminal may have a separate claim for indemnification against Sunayers or Gump & Ayers, but it cannot use this claim as a defense to its obligations to First Federal on the note.

■ Air Terminal also argues First Federal is not a holder in due course of the Air Terminal note under Utah Code Ann. § 70A–3–304(2) which provides:

> "The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument ... in any transactions for his own benefit or otherwise in breach of duty."

Specifically, Air Terminal claims Gump & Ayers, as general partner of Sunayers, negotiated the note and $18,500 of the $100,000 proceeds from the First Federal loan was paid by Sunayers to satisfy a previous debt owed to Gump & Ayers as part of the Morse Shortfall. Accordingly, Air Terminal asserts First Federal knew the loan was obtained for the "benefit" of Gump &

Ayers, a fiduciary of Air Terminal, in contravention of § 70A–3–304(2).

There is no question that Gump & Ayers, as general partner of Sunayers, was a fiduciary to Air Terminal and that proceeds of the loan were used to satisfy debts of the Sunayers development project for which Air Terminal had given its note. However, Air Terminal cites no authority for the proposition that these facts alone establish that its note was negotiated "for the benefit" of Gump & Ayers. Furthermore, the case law interpreting provisions identical to § 70A–3–304(2) require a more substantial link to the fiduciary's personal interests than exists here. *See, e.g., Nashville City Bank and Trust Co. v. Massey,* 540 F.Supp. 566, 578 (M.D.Ga.1982) ("having made a *personal* loan to Mr. Thigpen and having permitted him as general partner —a fiduciary—to assign promissory notes which were payable to the limited partnership as security for his personal loan, the plaintiff bank, as a matter of law, took each of the promissory notes with 'notice of a claim against the instrument' and thus is not a holder in due course").

Unlike the facts in *Nashville City Bank,* the indirect benefit received by Gump & Ayers of having a bona fide debt, owed to it by Sunayers, repaid out of the proceeds of the loan is not the type of "benefit" proscribed by § 70A–3–304(2).

■ Air Terminal also asserts First Federal knew the note negotiated by Gump & Ayers was in breach of duty because First Federal knew the proceeds were to be used to satisfy the Morse Shortfall and that Air Terminal was to be indemnified from the Morse Shortfall under the Purchase and Security Agreement.

As previously discussed, we consider Air Terminal's claim for indemnification against Gump & Ayers and Sunayers as a claim independent of its liability on the note. Despite the indemnity provisions, Gump & Ayers had the right to assign Air Terminal's negotiable note for the benefit of Sunayers, and did not breach its fiduci-

---

**1.** Utah Code Ann. § 70A–3–304(1)(b), the provision at issue in this case, is identical to § 3–304(1)(b) of the Uniform Commercial Code referred to by the court in *Sundsvallsbanken.*

ary duty in doing so. The assignment of the note does not vitiate Air Terminal's claim of indemnification against Gump & Ayers and Sunayers for funds expended to satisfy the Morse Shortfall. In summary, we do not find § 70A-3-304(2) defeats First Federal's status as a holder in due course.

We hold that the Air Terminal note is a negotiable instrument and First Federal is a holder in due course. The judgment of the trial court is, therefore, reversed, and the case is remanded for proceedings consistent with this opinion.

GARFF and DAVIDSON, JJ., concur.