OPINION OF THE COURT
Wachtler, J.
The issue on this appeal is whether the plaintiff Chemical Bank of Rochester (Chemical) acquired the status of a holder in due course as to several notes executed by defendants Paddy Chayefsky, John Haskell, Halsey F. Sherwood and Arthur Giliotti. The trial court held in these three related cases, that Chemical was a holder in due course and in that capacity took the notes free of all defenses raised by the makers. The Appellate Division reversed, based on its conclusion that Chemical did not act in good faith in purchasing the notes. Chemical appeals.
In 1972 defendants became involved in the organization of a limited partnership, Quarry Square Associates (Quarry), for the purpose of developing an apartment complex in Buffalo, New York. Stanndco Developer’s, Inc. (Stanndco), and David J. Quigley, among others, were general partners in the enterprise. The defendants, among others, were limited partners *90 who . made capital contributions to the partnership by execution of the notes in issue on this appeal.
In 1973 Quigley approached T. Richard Olney in an attempt to borrow money using the notes as collateral. Olney, who at the time was an officer of Chemical’s predecessor, the State Bank of Hilton (State Bank), declined to enter a debtor-creditor relationship with Stanndco, but offered instead to buy the notes outright. Stanndco agreed to the transfer for a discount on their face value. On May 25, 1973, the transaction was consummated by Stanndco, through its agent Quigley, and acting as general partner of Quarry, indorsing the notes to itself as an individual, and then indorsing the notes to the State Bank of Hilton. In return, State Bank drew a check for $274,390 to the order of Stanndco. It is noteworthy that this check was not drawn to the order of Stanndco as general partner of Quarry, nor did it otherwise indicate that Stanndco was to be handling the funds in a representative capacity. On July 26, 1973, Chemical notified the makers that it had become a holder of the notes. The makers did not respond, and the first payments under the notes were made on schedule by all except Haskell during December, 1973. By February, 1974, however, Quigley and Stanndco had filed in bankruptcy. Chemical then sued Haskell on his notes and Chayefsky sued Chemical on behalf of himself and the other limited partners seeking, inter alia, to prevent Chemical from attempting to collect on the paper. Sherwood and Giliotti brought an action similar to Chayefsky’s and seeking the same relief. The bank counterclaimed in the suits by the makers, and, because the three cases presented similar issues, they were tried together.
In order for Chemical to recover it first had to establish its status as a holder of the notes. This it did by production of the notes in its possession, which had been transferred to Chemical by another holder with all necessary indorsements (Uniform Commercial Code, § 1-201, subd [20]; § 3-202, subd [1]). There is no merit to the argument by defendants that Chemical cannot be a holder because Stanndco had no actual authority to indorse the instruments for nonpartnership purposes (cf. Uniform Commercial Code, § 3-404). The code contemplates that it is possible for a person to have the power to indorse an instrument even though the signing is beyond actual authority, if the signer is clothed with apparent authority (see Uniform Commercial Code, § 3-207; McKinney’s Cons Laws of *91 NY, Book 62 Vi, Uniform Commercial Code, § 3-403, official comment No. 1). Clearly, as the organizer and managing general partner for Quarry, Stanndco had at least apparent authority to deal with negotiable instruments which were the property of the partnership. Thus; as a holder, Chemical is entitled to recover unless the makers established a defense (Uniform Commercial Code, § 3-307, subd [2]). Several have been alleged, including fraud, failure of consideration, and breach of fiduciary duty, all arising out of the activities of Stanndco. The makers contend that as a transferee of Stanndco, Chemical, too, is subject to these defenses (see Uniform Commercial Code, §§ 3-201, 3-306). However, even assuming their validity, these defenses, none of which, incidentally, are even colorably of the real defense variety,[1] they are to no avail, because Chemical has established itself as a holder in due course (Uniform Commercial Code, § 3-305).
A holder in due course is a holder who takes an instrument (1) for value, (2) in good faith, and (3) without notice that it is overdue or has been dishonored or of any defense or claim against it on the part of another (Uniform Commercial Code, § 3-302, subd [1]). There is no question that value was given for the notes in question. Nevertheless, the Appellate Division did not deem Chemical a holder in due course because that court considered the facts and circumstances surrounding the negotiation of the notes to Chemical as sufficiently indicative of irregularities so as to put Chemical on inquiry as to the purposes for which Stanndco was acting. We disagree.
The conclusion of the Appellate Division concerning Chemical’s duty to inquire raises important questions as to the meaning of the terms "in good faith” and "without notice” as used in section 3-302. Good faith under the code is defined as "honesty in fact in the conduct or transaction concerned” (Uniform Commercial Code, § 1-201, subd [19]) and it is clear that the draftsmen intended that this language set a subjective and not objective standard. In fact, so that no confusion would persist on this score, a proposed draft of section 3-302 which explained good faith in terms related to commercial reasonableness was amended to delete the offending language *92 (White and Summers, Uniform Commercial Code [2d ed], § 14-6, p 563; 1954 Report of NY Law Rev Comm, vol 1, pp 203-205). Thus, the inquiry is not whether a reasonable banker in Chemical’s position would have known, or would have inquired concerning the alleged breach by Stanndco of its partnership duties, but rather, the inquiry is what Chemical itself actually knew. If Chemical did not have actual knowledge of some fact which would prevent a commercially honest individual from taking up the instruments, then its good faith was sufficiently shown (see 1955 Report of NY Law Rev Comm, vol 2, pp 906-907).
A similar problem is presented on the issue of whether Chemical had notice of claims or defenses on the notes. Notice is defined for the code generally in section 1-201 (subd. 25) which states: "A person has 'notice’ of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.”
Arguably, were paragraph (c) of subdivision (25) to be applied to determine whether a holder has taken an instrument "without notice * * * of any defense * * * or claim” (Uniform Commercial Code, § 3-302, subd [1]), an objective or reasonable person standard would be appropriate. However, section 1-201 also states that its definitions are "[sjubject to additional definitions contained in the subsequent Articles of this Act which are applicable to specific Articles or Parts thereof, and unless the context otherwise requires”.
We therefore examine the explanation of notice provided in article three, which states in specific reference to notice of a claim or defense that: "the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith.” (Emphasis added.) (Uniform Commercial Code, § 3-304, subd [7].) It is important to note that this subdivision speaks in terms of "knowledge” and not the "reason to know” language used in subdivision (3) of the same section. This is a meaningful distinction because "knowledge” under the code means "actual knowledge” (Uniform Commercial Code, § 1-201, subd [25]).[2] Moreover, subdivision (7) of section 3-304 was added by *93 New York to the 1962 Official Text of the code in order to make clear that the subjective test, applicable in this State even before the enactment of the code was intended to be continued (1962 Supp Report on the Uniform Commercial Code, NY Comm on Uniform State Laws,* pp 6-7; see Hall v Bank of Blasdell, 306 NY 336).
In applying the above principles to the facts at bar, we hold that Chemical sustained its burden of establishing itself as a holder in due course. Chemical’s president, Olney, testified that he "was aware of no defense”, and that as far as communication with the makers indicating the existence of defenses was concerned, there was "none whatsoever”. In no way is this testimony directly controverted. On the contrary, the fact that when the makers were notified of the transfer they never communicated to Chemical the difficulties now argued, indicates that they, too, were unaware of any defenses. It is unreasonable to expect in this situation that Chemical foresee improprieties in the underlying transaction which would later be disclosed. The State’s interest in free flow of commercial paper does not tolerate the placing of such a burden on banks acting in good faith.
The most that can be said of the testimony offered to controvert Chemical’s position is that it indicated suspicious circumstances which might well have induced a prudent banker to investigate more thoroughly than did Chemical before taking the notes. However, as has been previously indicated, this is not enough. Chemical was not bound to be " 'alert for circumstances which might possibly excite the suspicions of wary vigilance’ ” (Hall v Bank of Blasdell, 306 NY 336, 341, supra). There was no obligation on Chemical, as a purchaser of negotiable paper, to investigate the financial position of its transferor, or the progress of the underlying construction project. The failure of Chemical to take steps to insure that Stanndco was negotiating the instruments for partnership purposes or the fact that correspondence sent to Chemical was written on Stanndco stationery do not, in and of themselves, indicate impropriety. Nor did the fact that the notes were purchased at a discount, or that Chemical drew the check by which it purchased the drafts to the order of Stanndco and not Quarry, or the other factors incidental to the transaction, indicate in any substantial way a misuse of funds or constitute notice of misappropriation. Stanndco was a general partner vested by the limited partners with broad *94 managing powers, and if misdealings originating in that delegation created a loss, the loss should not fall on those who dealt with Stanndco in good faith, but on those who provided the opportunity for misappropriation. There was no testimony that Chemical had any knowing part in the alleged misappropriation and, in fact, Chemical had reason to believe that Stanndco was acting for a partnership purpose at the time that it sold the notes and received the proceeds.
Accordingly, the orders of the Appellate Division should be reversed, and the case remitted to Supreme Court, Monroe County, for a determination of amounts of plaintiff’s attorney’s fees, and for the entry of judgments for the amounts due on the notes together with attorney’s fees in favor of appellant Chemical Bank of Rochester.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Orders reversed, with costs, and the case remitted to Supreme Court, Monroe County, for further proceedings in accordance with the opinion herein.

. Defendants Sherwood and Giliotti did attempt to allege fraud in the factum concerning the procurement by Stanndco of their notes, but both Trial Term and the Appellate Division found — and we agree — that this allegation was wholly unsupported, there being no proof that Sherwood and Giliotti did not understand the nature of the instruments they signed.

. In this respect, of course, section 1-201 clarifies, and is in no way inconsistent with section 3-304.