Warick Allen LEEMING, as Liquidator for Bishopsgate Insurance Australia Limited (in liquidation), and Bishopsgate Investments Pty. Ltd., Plaintiffs,

v.

DEAN WITTER REYNOLDS INC. and John C. Kunkowski, Defendants.

No. 86 Civ. 4411 (GLG).

United States District Court, S.D. New York.

Jan. 8, 1988.

Milbank, Tweed, Hadley & McCloy, New York City (Richard C. Tufaro, of counsel), for plaintiffs.

Cadwalader, Wickersham & Taft, New York City (Earl H. Nemser, Joseph Polizzotto, Steven G. Brody, of counsel), for defendant Dean Witter Reynolds Inc.

Evans, Osborne, Kreizman & Welch, Redbank, N.J. (John P. Croake, of counsel), for defendant John C. Kunkowski.

## OPINION

GOETTEL, District Judge.

This action was initiated by Warick Allen Leeming, as Liquidator for Bishopsgate Insurance Australia, Ltd. ("Bishopsgate Insurance") and by Bishopsgate Investments Pty. Ltd. ("Bishopsgate Investments"), a wholly-owned subsidiary of Bishopsgate Insurance. It is brought against Dean Witter Reynolds Inc. and its former employee, John Kunkowski. The plaintiffs seek damages arising from the defendants' alleged participation in a plan to improperly divert funds of the plaintiff corporations to third parties by transferring them through accounts at Dean Witter.

Jurisdiction is based on 28 U.S.C. § 1332(a). The plaintiffs are citizens of Australia, the defendants are citizens of the United States, and the amount in controversy exceeds $10,000.

The motion before us is the defendants' motion to dismiss the complaint under Fed. R.Civ.P. 12(b)(6). In their memorandum, the defendants also argue that the fraud claims against them should be dismissed under Fed.R.Civ.P. 9(b). For the reasons discussed below, the relief sought is granted and the complaint is dismissed, with leave to replead.

FACTS

The central figure in this controversy is an individual of dual Greek and Australian citizenship named Andrew Stathis. Stathis allegedly looted the plaintiff corporations of over $19,000,000 (Australian) by wiring the funds to his personal and corporate accounts at Dean Witter. However, Stathis is not a defendant in this action. He fled Australia on August 4, 1983, ten days before his alleged fraud was discovered, and his whereabouts are presently unknown.

The plaintiffs contend that the defendant Kunkowski, in his capacity as Stathis' account executive at Dean Witter, knew that Stathis was improperly diverting funds belonging to Bishopsgate Insurance and Bishopsgate Investments. They further contend that Kunkowski actively aided Stathis' efforts. The plaintiffs seek to hold Dean Witter liable on the grounds that it knew or should have known of Kunkowski's alleged complicity in Stathis' actions, that it was unjustly enriched by transactions involving Stathis' accounts, and that it, along with Kunkowski, fraudulently concealed its involvement in Stathis' alleged illegal activities.

Stathis and Kunkowski had been business acquaintances before Kunkowski began working at Dean Witter. When Kunkowski joined Dean Witter as an account executive, he brought Stathis to the firm as a customer. At that time, Stathis was part-owner and chief financial officer of an Australian commodities brokerage, Richardson Mann Securities Corporation Pty. Ltd ("Richardson Mann"). In addition, Stathis controlled a second Australian corporation, Elak Pty. Ltd. ("Elak").

Stathis opened various customer and firm accounts at Dean Witter in the name of Richardson Mann, as well as an account called the Richardson Mann Elak account. Subsequently, in February 1983, Stathis opened another account through Kunkowski called the Elak Pty. Ltd. # 2 (the "Elak account"). The movement through these accounts of the funds of Bishopsgate Insurance and Bishopsgate Investments forms the substance of the plaintiffs' claims.

The plaintiffs allege that in December 1982, Stathis set out to gain control of Bishopsgate Insurance for the purpose of defrauding it. By early 1983, Stathis held an 80 percent ownership interest, and was an officer and director of the company. He financed his acquisition in part with funds from the Richardson Mann and Richardson Mann Elak accounts. The plaintiffs suggest that Kunkowski helped to make the acquisition possible by concealing that Dean Witter was the source of some of the funds used. The plaintiffs do not, however, allege that Kunkowski knew that Stathis' reason for wanting to acquire the Bishopsgate companies was to loot them.

Once in control of the company, the plaintiffs allege, Stathis took money belonging to Bishopsgate Insurance or Bishopsgate Investments on the following occasions. The first transfer at issue occurred on February 4, 1983. On that date, $1,930,400 allegedly belonging to Bishopsgate Insurance was deposited in the Elak account. A large portion of this money was later transferred to the Richardson Mann Elak account to provide margin for commodities trading.

The second incident occurred on February 24, 1983, when Stathis deposited $736,619 into the Richardson Mann Elak account. The plaintiffs allege that these funds were also misappropriated from Bishopsgate Insurance.

When heavy trading losses in the Richardson Mann Elak account left that account with a debit of more than $4 million, Stathis again arranged for another transfer of Bishopsgate Insurance's funds, $4,782,557 into that account.[1] Stathis effected this transfer by instructing the Australia and New Zealand Bank ("ANZ Bank") to wire the funds to its New York office and to contact Dean Witter when they were received. Pursuant to this arrangement, Kunkowski received a cashier's check dated March 4, 1983, which was drawn on the ANZ Bank and made payable to Dean Witter. On the face of the check was the reference "BO BISHIPGATE [sic] INS. AUSTRALIA LTD." Although the check carried no legend indicating the account to be credited, Kunkowski deposited the funds into the Richardson Mann Elak account.

On June 6, 1983, Stathis again arranged for $2,639,576 of Bishopsgate Insurance's funds to be wired to the New York office of the ANZ Bank, and the Bank issued a cashier's check in that amount payable to

---

1. The plaintiffs allege that Stathis secured the approval of the Australian government to export those funds by falsely claiming that they would be used to purchase securities.

Dean Witter. The check carried the notation "B/O BISHOPS GATE [sic] INSURANCE PTY. LTD." but did not indicate an account to be credited. Kunkowski deposited the funds into the Elak account.

The last transfer of funds at issue in this case was effected by wire from the ANZ Bank to Dean Witter's bank in New York. The plaintiffs allege that the instructions accompanying the transfer showed Dean Witter as the payee and Bishopsgate as the remitter, although the defendants deny that they had knowledge of the source of these funds. As with the previous two transfers, no customer account was specified. Kunkowski applied the funds to the Elak account.

Between February and August 1983, Kunkowski periodically disbursed monies from Stathis' accounts to third parties, including other corporations controlled by Stathis. These disbursements were made pursuant to Stathis' instructions.

Lastly, we note that the plaintiffs have alleged that Kunkowski received approximately $20,000 from Stathis' accounts during the time that he served as Stathis' account executive. The plaintiffs imply, but do not allege, that these payments were somehow improper or illegal.

On the basis of these allegations, the defendants make several claims for fraud, negligence, and conversion. They further claim that the defendants aided and abetted Stathis' violations.

DISCUSSION

A. Statute of Limitations

The defendants' first argument in support of their motion is that the plaintiffs' claims for conversion and negligence are time-barred to the extent that those claims arise from transactions occurring before June 5, 1983. They point out that the applicable statutes of limitations for negli-

gence and conversion run for three years, N.Y.Civ.Prac.L. & R. § 214(4) (McKinney 1972), and that the plaintiffs did not commence this action until June 5, 1986.

The plaintiffs argue, without support, that the defendants should be estopped from raising a statute of limitations defense because throughout the statutory period and up to the present, the defendants have allegedly fraudulently concealed information that is pertinent to the plaintiffs' case. Assuming, without deciding, that the so-called "discovery rule"[2] could be applied in this case, the plaintiffs' allegations are in any event insufficient to invoke it. It is not the concealment of merely pertinent information, but the concealment of the cause of action itself which will prevent a cause of action from accruing and thus postpone the starting of the statutory period. When the plaintiffs become aware of the critical facts of the injury and its cause, the cause of action will have accrued and the statutory period will begin to run. *Barrett v. United States*, 689 F.2d 324, 328 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983).

The plaintiffs here have not alleged that the defendants have concealed a cause of action. They have simply complained that the defendants have knowingly withheld incriminating documents and that they continue to do so. The plaintiffs learned of Stathis' allegedly fraudulent scheme in August 1983 and promptly engaged counsel to investigate the possibility that the defendants participated in that scheme. Through their own investigation, and with account statements provided by Dean Witter, the plaintiffs amassed enough information to bring this suit without further cooperation from the defendants. Thus it does not appear that the defendants have concealed a cause of action from them, and in any

---

**2.** The "discovery rule" operates to postpone the accrual of a cause of action from the time when the tort is complete to the time when the plaintiff has discovered sufficient facts to make him aware that he has a cause of action. *Barrett v. Hoffman,* 521 F.Supp. 307, 320 (S.D.N.Y.1981), *rev'd on other grounds,* 689 F.2d 324 (2d Cir. 1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111,

77 L.Ed.2d 1366 (1983). Where it is applicable, the rule only obtains if a plaintiff is "blamelessly ignorant of the existence or cause of his injury...." *Stoleson v. United States,* 629 F.2d 1265, 1269 (7th Cir.1980). The discovery rule applies only in a few narrowly defined instances.

event, the plaintiffs have not alleged that the defendants have done so.

■ The plaintiffs next argue that even if the defendants can raise a statute of limitations defense, they are nevertheless entitled to recover under a theory of unjust enrichment, because under that theory, a six-year statutory period would apply. We disagree. Although under certain circumstances claims concerning unjust enrichment are governed by the "residual" six-year statute of limitations contained in N.Y.Civ.Prac.L. & R. § 213(1) (McKinney 1972), such is not the case here. If, as in the present case, legal and equitable remedies are applicable to the same occurrence or conduct, the statute of limitations governing the legal remedies will control the equitable remedies as well. 1 Weinstein, Korn & Miller, New York Civil Practice, ¶ 213.01 (1987) (citing *Schreibman v. Chase Manhattan Bank*, 15 A.D.2d 769, 224 N.Y.S.2d 977 (1962)). Thus, the three-year period applicable to the plaintiffs' claims for conversion and negligence also governs their claims of unjust enrichment. Those claims are therefore time-barred to the extent that they arose before June 5, 1983.

### B. Holder in Due Course

■ As to the remaining claims against them, the defendants argue that they accepted the cashier's checks and wire transfers at issue here as holders in due course and that consequently they are not liable for any claims against those funds.[3] In opposition, the plaintiffs argue that the test for determining whether an individual is a holder in due course raises subjective factual issues of the individual's actual knowledge, which issues are ill-suited for resolution on a motion to dismiss. The plaintiffs' point is correct, *see Chemical Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 432 N.Y.S.2d 478, 411 N.E.2d 1339 (1980), but largely inapposite here. We do not reach the test or the factual issues it presents, because we find that the plain-

tiffs have not raised a triable issue of the defendants' good faith.

■ Besides suggestion and innuendo, the plaintiffs rely on only the following circumstances to support their claim that the defendants were on notice of Stathis' scheme and indeed participated in his fraud. First, the plaintiffs complain that the defendants concealed the source of the funds used to finance Stathis' acquisition of Bishopsgate. The plaintiffs do not, however, suggest the basis of any moral or legal duty on the part of the defendants to disclose this information to the plaintiff corporations. We therefore fail to see how this indicates participation in a fraud.

Next, the plaintiffs claim that the defendants concealed the transfer of Bishopsgate funds to Dean Witter, and concealed the improper and unlawful use of those funds. As proof of this claim, the plaintiffs point to the fact that certain of the transfers were made by cashier's check, at Kunkowski's direction. They suggest that this manner of transfer was a "ruse" concocted by Kunkowski to conceal the fact that the source of the funds being moved was Bishopsgate. First of all, we see nothing unusual about the use of cashier's checks. More importantly, we do not see how the use of a cashier's check marked "B/O BISHOPSGATE" supports the conclusion that anyone was trying to hide the fact that Bishopsgate was the remitter of the check.

On a related point, the plaintiffs suggest something improper in the fact that although no customer account was designated on the cashier's checks, Kunkowski knew to apply the funds to Stathis' accounts. It does not seem to us odd that Kunkowski knew to apply the funds to certain of Stathis' accounts. One would expect, when transfers involving millions of dollars are being made, that a customer would be likely to communicate with his broker in advance. In other words, this fact simply does not raise our suspicions,

---

**3.** The rights of a holder in due course under N.Y.U.C.C. § 3–305 (McKinney 1964) technically do not apply to the receiver of a wire transfer.

However, courts have applied principles similar to those underlying that section of the U.C.C. in cases involving wire transfers.

much less a triable issue of the defendants' good faith.

The plaintiffs make two other points to establish their claim that the plaintiffs participated in Stathis' scheme, or at least were aware of it. First, they make the allegation that Kunkowski received payments from Stathis' accounts. However, noticeable by its absence is an allegation that these payments were improper, much less illegal. The mere fact of a legitimate payment to an account executive does not support an allegation of bad faith.

Finally, the defendants refer to a letter which Stathis wrote on April 15, 1982, in which he authorized the defendants to make disbursements to third parties from the accounts at issue. The plaintiffs claim that this letter put the defendants on notice of Stathis' scheme to divert Bishopsgates' funds. We fail to see why a disbursement authorization should put an account executive on notice of fraud.

For all of these reasons, we find that the allegations on which the plaintiffs rely do not put the defendants' good faith into question.

### C. Particularity of Fraud Pleading

■ Besides negligence and conversion, the plaintiffs have also brought a claim for fraud against the defendants. They claim that the defendants engaged in a course of conduct to defraud Bishopsgate, and that with intent to deceive Bishopsgate, the defendants knowingly concealed the fraud being perpetrated. In support of this claim the plaintiffs point to the circumstances discussed above. For the same reasons discussed above, these circumstances do not establish a basis from which an inference of fraud can be drawn. The plaintiffs having offered no other sufficient basis for their fraud claim, we must agree with the defendants that it is not stated with particularity as required under Fed.R.Civ.P. 9(b). *See Deutsch v. Flannery,* 597 F.Supp. 917 (S.D.N.Y.1984). This conclusion applies as well to the plaintiffs' claim that the defendants aided and abetted Stathis in his fraudulent scheme.

CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss the complaint is granted, with leave to replead within twenty days.

SO ORDERED.

