FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Burk DENNIS, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Gilbert FUENTES, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Terry FOSTER, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Fred CROWLEY and Jeanice Drury
Crowley, Defendants.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Ralph E. CLURE, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Mark SILVER, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Marvin PERLMAN, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Richard FORINGER, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Larry MAURER, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Francis A. DESARRO, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Jon WALLIN, Defendant.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Gerald FRESONKE, Defendant.

Nos. 87 Civ. 2959 (RWS), 87 Civ. 2968 (RWS), 87 Civ. 3005 (RWS) and 87 Civ. 3006 (RWS).

United States District Court,
S.D. New York.

June 24, 1988.

Bizar D'Alessandro Shustak & Martin, New York City (Gayle S. Sanders, Adele Taylor Scott, of counsel), for plaintiff.

Hannoch Weisman, P.C., Roseland, N.J. (Larry T. Neher, William J. Heller, Rosemary M. Laura, of counsel), for defendants.

OPINION

SWEET, District Judge.

Plaintiff First City Federal Savings Bank ("First City") has moved for an order pursuant to Fed.R.Civ.P. 56 granting summary judgment in its favor on its consolidated actions against twelve defendants for amounts due on promissory notes in unpaid principal and interest accrued thereon, together with the costs of collection, including reasonable attorneys' fees. Upon the facts and conclusions set forth below, the motion is denied.

*Prior Proceedings*

In the opinion dated January 26, 1988, familiarity with which is assumed, defendants' motions to dismiss for lack of personal jurisdiction were denied. *See First City Federal Savings Bank v. Dennis, et al.,* 680 F.Supp. 579 (S.D.N.Y.1988).

*Facts*

The material facts surrounding the making of the promissory notes are not in dispute and are set forth in First City's statement pursuant to Rule 3(g) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of

New York, as supported by affidavits from the president and executive vice president of First City. First City is a National Banking Association with its principal office in New York City. The defendants are individual investors from California and, in one case, Texas.

Each of the defendants executed a promissory note (the "Note") in favor of First City to obtain a loan for investment in a tax advantaged limited partnership known as the Colburn Energy Split Asset Fund, Ltd. ("CESAF") which was intended to invest in oil and gas ventures. The principal promoter and general partner of CESAF was Colburn Energy Corporation ("Colburn Energy") represented by its principal, Charles Colburn ("Colburn"). In connection with their investments in CESAF, each defendant also executed a loan application form, an assignment and security agreement ("Security Agreement"), a borrower's letter ("Borrower's Letter"), and an engagement letter ("Engagement Letter") addressed to National Capital Corporation ("NCC"). The Security Agreement grants First City a security interest in the borrower's interest in CESAF and requires the borrower to reimburse First City for all costs and expenses, including attorneys' fees and disbursements, incurred in connection with First City's enforcement of its rights thereunder. The Borrower's Letter authorizes First City to date the Note and pay the proceeds of the loan directly to CESAF. In addition, the Borrower's Letter contains an acknowledgment by the borrower that First City was acting solely as a lender and not as an investment advisor, had made no attempt to analyze or evaluate the borrower's intended investment in CESAF, and had made no representation to the borrower to induce him to request the loan. Finally, the Engagement Letter requests NCC to assist the individual defendants in obtaining the loans and authorizes NCC to obtain credit information and to contact credit references. The Engagement Letter provides that NCC shall receive a fee equal to 5 percent of the net amount of the loan.

By the terms of the Notes, each defendant agreed to pay First City the principal sum of the Note in equal, semi-annual installments, commencing on August 1, 1986 with a final installment due on February 1, 1991, together with interest on the unpaid principal sum at an annual rate equal to 2% above First City's reference rate of interest as publicly announced by First City in New York from time to time.[1] The defendants agreed that upon default in payment of any amount due under the Note, the entire amount of the Note would become due and payable without notice or demand. The defendants also agreed to waive the right to interpose any set-off or counter-claim in any action brought under the Note. The Notes provide that they shall be governed by and construed in accordance with the laws of New York State. The Notes also provide that the defendants shall reimburse First City for all costs and expenses, including reasonable attorneys' fees and disbursements, incurred by First City in connection with the enforcement of the defendants' obligations thereunder.

Although the record does not indicate the present status of CESAF and Colburn Energy, it appears that an investigation by the Securities and Exchange Commission into Colburn and his companies is pending. All of the defendants have defaulted in payment of the principal and interest due on their Notes, and First City has declared the entire unpaid balance of the debt due and immediately payable to First City together with all accrued interest to the date of payment, as provided in the Notes.

In opposition to the motion for summary judgment, defendants have submitted the affidavit of Jeanice Crowley ("Crowley Affidavit") who, along with her husband, was a limited partner in CESAF. In her affidavit, Crowley makes statements concerning

1. Defendants Dennis, Silver, Foringer, Maurer, and Desarro each executed a Note for the principal amount of $52,500. Defendants Fuentes and Foster each executed a Note for the principal amount of $105,000. Defendants Crowley, Wallin, and Fresonke each executed a Note for the principal amount of $78,750. Defendants Clure and Perlman each executed a Note for the principal amount of $26,250.

the involvement of First City in the financing of CESAF. She claims that by accepting loan payments directly from Colburn and by working out "defaults" exclusively with Colburn, First City engaged in a course of conduct consistent with her understanding that the primary responsibility for the loans would belong to Colburn. She asserts that without the knowledge of the limited partners 15 percent of the proceeds of the loans was retained in a collateral account with First City in New York, and thus was not available for partnership investments. She asserts that on one occasion in an attempt to maintain the appearance of a third party holder of the Notes in due course, First City directed that funds be distributed from the partnership account to the limited partners so that the limited partners could, in turn, make a payment on the loans directly to the bank. Finally, the Crowley Affidavit contains a series of statements concerning various alleged misrepresentations made by Colburn to the limited partners concerning the status of CESAF's investments.

In opposition to the instant motion, defendants also rely on the affidavit of Richard Gipe ("Gipe") which was submitted in connection with defendants' prior motion to dismiss for lack of personal jurisdiction. Gipe is a broker-dealer who participated in the structuring of CESAF. In his affidavit, Gipe asserts that NCC and First City share office space and employees in New York City and that two of NCC's officers once described NCC as the "alter ego" of First City.

*Summary Judgment on the Notes.*

In order to grant summary judgment, this court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985). Summary judgment enables a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire*, 804 F.2d at 12.

■ These actions were brought for judgment upon instruments for the payment of money only. Under New York law, proof of the Note and defendants' failure to make payment thereon establishes a *prima facie* case for recovery on the Notes. *Gateway State Bank v. Shangri-La Private Club for Women, Inc.*, 113 A.D.2d 791, 493 N.Y.S.2d 226, 227 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 627, 499 N.Y.S.2d 679, 490 N.E.2d 546 (1986); *Mills v. Ryan*, 41 A.D.2d 689, 342 N.Y.S.2d 889 (4th Dep't 1973), *aff'd*, 33 N.Y.2d 948, 353 N.Y.S.2d 730, 309 N.E.2d 130 (1974). Here, each defendant signed a Note pursuant to which he agreed to pay First City equal installments of principal and interest as provided in the Note. The defendants defaulted in payment of principal and interest due, and First City declared the entire unpaid balance of the debt due and immediately payable together with all accrued interest to the date of payment. Therefore, First City has established a *prima facie* claim on the Notes.

The defendants do not deny the allegations in First City's motion, nor do they deny having executed the Notes. The do not dispute that, as authorized by the Borrower's Letter signed by each defendant, First City disbursed the proceeds of the loans directly to CESAF. Finally, the defendants do not deny their default in payments of principal and interest under the terms of the Notes. However, relying on the assertions in the Crowley and Gipe Affidavits and the exhibits attached thereto, defendants assert various legal theories in an attempt to challenge the status of First City as a holder of the Notes in due course.

■ Defendants contend that genuine issues of material fact exist concerning

whether the extent of First City's control, if any, over Colburn Energy and the acts of CESAF gives rise to a fiduciary duty on the part of First City to (1) exercise due diligence in examining CESAF and its investments and (2) disclose to the limited partners information concerning any irregularities in the activities of Colburn and CESAF. In support of their claim of lender liability, defendants cite to several cases from outside this Circuit in which courts have imposed fiduciary duties on banks whose level of involvement in a business transaction has made them more than mere lenders and given rise to liability for the acts of the promoter of the transaction. *See, e.g., Citibank, N.A. v. Data Lease Financial Group*, 828 F.2d 686 (11th Cir. 1987); *Melamed v. Lake County Nat'l Bank*, 727 F.2d 1399 (6th Cir.1984); *Credit Managers Ass'n of Southern California v. Superior Court*, 51 Cal.App.3d 352, 124 Cal.Rptr. 242 (1975); *Connor v. Great Western Savings and Loan Ass'n*, 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (Sup.Ct.Cal.1968). Defendants also contend that genuine issues exist as to whether First City is liable as an aider and abettor of Colburn's alleged violations of the federal securities laws. *See, e.g., Metge v. Baehler*, 762 F.2d 621 (8th Cir.1985), *cert. denied sub nom., Metge v. Bankers Trust Co.*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed. 2d 774 (1986); *Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793 (3d Cir.), *cert. denied sub nom., First Pennsylvania Bank N.A. v. Monsen*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

There is little in the record at this stage of the proceedings to support defendants' allegations of First City's control over the investments of CESAF and the activities of the general partner Colburn Energy. The bank's one-time request that loan payments be made directly through the limited partners fails to substantiate defendants' claim that the bank exercised control over the partnership's funds. Similarly, First City retained 15 percent of the proceeds of the loans in a collateral account pursuant to authorization from Colburn Energy who, in turn, had the authority under the Limited Partnership Agreement, signed by each of the limited partners, to take such measures on behalf of the partnership. The bank's retention of this sum as additional security for the loans is not indicative of an uncommonly high degree of involvement in the affairs of the partnership. *Cf. Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 99 (5th Cir.1975). Finally, because it does not appear that defendants have filed a complaint against Colburn alleging violations of the federal securities laws, there is no basis for defendants' claims of aider and abettor liability on the part of the bank.

However, a genuine issue does exist as to whether First City is a holder of the Notes in due course.[2] Under the Uniform Commercial Code ("UCC"), a holder in due course is a holder who takes an instrument (1) for value, (2) in good faith, and (3) without notice that it is overdue or has been dishonored or of any other defense or claim against it on the part of another. N.Y.U.C.C. § 3–302(1). As payee under the Notes, First City may be a holder in due course. N.Y.U.C.C. § 3–302(2). There is no dispute that First City gave value for the Notes. Therefore, defendants' challenge to First City's status as a holder in due course turns on First City's lack of good faith or knowledge of a defense to the Notes. *Cf. Chemical Bank v. Haskell*, 51 N.Y.2d 85, 432 N.Y.S.2d 478, 480, 411 N.E. 2d 1339, 1341 (1980).

Good faith under U.C.C. § 3–302 is defined by the U.C.C. as "honesty in fact in the conduct or transaction concerned."

---

**2.** If defendants can establish that First City is not a holder of the Notes in due course, the bank will be subject to all claims and defenses against payment on the Notes available pursuant to N.Y.U.C.C. § 3–306, which provides in relevant part:

Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) the defenses of want or failure of consideration, non-performance of any condition precedent, nondelivery, or delivery for a special purpose. . . .

N.Y.U.C.C. § 1–201(19). In an action brought by a bank to recover amounts due on an outstanding promissory note, the New York Court of Appeals, noting that this language was intended as a subjective standard, stated:

> the inquiry is not whether a reasonable banker in Chemical's position would have known, or would have inquired concerning the alleged breach by Stanndco of its partnership duties, but rather, the inquiry is what Chemical itself actually knew. If Chemical did not have actual knowledge of some fact which would have prevented a commercially honest individual from taking up the instruments, then its good faith was sufficiently shown.

*Chemical Bank v. Haskell,* 432 N.Y.S.2d at 480, 411 N.E.2d at 1341. Under this subjective standard, the existence of bad faith turns on whether the holder of the note knew that the transaction was suspect. *Sundsvallsbanken v. Fondmetal, Inc.,* 624 F.Supp. 811, 817 (S.D.N.Y.1985). As the Court ruled in *Scarsdale Nat. Bank & Trust Co. v. Toronto–Dominion Bank,* 533 F.Supp. 378, 386 (S.D.N.Y.1982),

> Bad faith, then, represents more than a failure to observe reasonable commercial standards.... [T]he circumstances of which the holder is aware must be such that the failure to inquire signals a desire to evade knowledge because of a belief or fear that the inquiry would reveal a defense. (citation omitted).

Where well-pleaded allegations of bad faith place the subjective knowledge of the holder at issue, summary judgment is rarely appropriate before the opposing party has been given the opportunity to discover what the holder knew at the time it took possession of the note. *See A. David Schwartz, M.D., P.C. Pension Trust v. Mastercraft Indus., Inc.,* 114 A.D.2d 946, 495 N.Y.S.2d 211, 213 (2d Dep't 1985).

This court has recently denied a motion for summary judgment by First City in a similar case in which the bank is attempting to collect on promissory notes executed by twelve investors in a limited partnership gone awry. *See First City Federal Savings Bank v. Bhogaonker et al.,* 684 F.Supp. 793 (S.D.N.Y.1988). There, a payment of 10 percent of the proceeds of the loans had been paid directly to NCC, and the record did not indicate that the investors had authorized such payment or had ever been informed of the relationship, if any, between NCC and First City. Because of the possibility that the 10 percent payment to NCC was, in effect, an undisclosed increase in the interest rate charged to the investors, summary judgment was denied with leave granted to renew after further discovery concerning the relationship between NCC and First City.

This case presents a similar problem albeit to a lesser degree. Although the limited partners here signed an Engagement Letter in which they agreed that NCC would receive a 5 percent fee in exchange for its services in assisting with the loans, the record does not indicate whether the relationship between NCC and First City was disclosed to the investors. If, unbeknownst to the defendants, NCC is in fact the "alter ego" of First City, the possibility again arises that the 5 percent payment to NCC was, in effect, an undisclosed increase in the interest rate charged to the defendants rather than a finders fee as described in the Engagement Letter.

In their Local Rule 3(g) statement, the defendants have raised the issue of whether NCC is a wholly owned and controlled subsidiary of First City, and if so, whether First City was required to disclose this relationship to the limited partners. First City has not addressed this issue in any of its moving papers except to note that NCC "places loans with [First City] from time to time and represented the Bank in these negotiations." Affidavit of Richard Greenberg, President of First City, ¶ 3. Therefore, a genuine issue of fact remains unresolved as to the extent, if any, of First City's "actual knowledge of some fact which would prevent a commercially honest individual from" accepting the Notes. *See Chemical Bank v. Haskell,* 432 N.Y.S.2d at 480, 411 N.E.2d at 1341.

Based on the findings and conclusions set forth above, an issue of material fact exists as to whether First City is a holder of the Notes in due course. Therefore, the

motion for summary judgment is denied at this time with leave granted to renew the motion after the parties have been given the opportunity to conduct additional discovery to address the issue discussed above.

IT IS SO ORDERED.