**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Burk DENNIS, Gilbert Fuentes, Terry Foster, Fred Crowley and Jeanice Drury Crowley, Ralph E. Clure, Mark Silver, Marvin Perlman, Richard Foringer, Larry Maurer, Francis A. Desarro, Jon Wallin, Gerald Fresonke, Defendants.**

**Nos. 87 Civ. 2959 (RWS) to 87 Civ. 2968 (RWS), 87 Civ. 3005 (RWS) and 87 Civ. 3006 (RWS).**

United States District Court, S.D. New York.

April 3, 1989.

Bizar D'Alessandro Shustak & Martin, New York City (Gayle P. Sanders, of counsel), for plaintiff.

Pratter, Tedder & Graves, Orange, Cal. (David H. Tedder, of counsel), for defendants.

OPINION

SWEET, District Judge.

Plaintiff First City Federal Savings Bank ("First City" or the "Bank") has renewed its motion pursuant to Fed.R.Civ.P. 56 for summary judgment on its consolidated actions against twelve defendants for amounts due on promissory notes in unpaid principal and interest accrued thereon, together with the costs of collection, including reasonable attorneys' fees. For the reasons set forth below, the motion is denied.

*The Parties and Prior Proceedings*

First City is a National Banking Association with its principal office in New York City. The defendants are individual investors from California and Texas. This action concerns promissory notes (the "Notes") which defendants executed in favor of the Bank to invest in a limited partnership, Colburn Energy Split Asset Fund, Ltd. ("CESAF" or the "Partnership"). The material facts surrounding the instant dispute are set forth in this court's opinion dated June 24, 1988 (the "June Opinion"), familiarity with which is assumed. *See First City Federal Savings Bank v. Dennis*, 690 F.Supp. 221 (S.D.N.Y.1988).

In this court's opinion dated January 26, 1988, defendants' motions to dismiss for lack of personal jurisdiction were denied. *See First City Federal Savings Bank v. Dennis*, 680 F.Supp. 579 (S.D.N.Y.1988). In the June Opinion, First City's motion for summary judgment was denied on the grounds that there was a question of fact with respect to whether the Bank is a holder in due course, for the Bank failed to address defendants' allegation that NCC is the "alter ego" of the Bank.

*The Facts*

In support of its motion, and in addition to the evidence presented in the first motion, First City has submitted the affidavits of Richard M. Greenberg ("Greenberg"), the principal stockholder and former President of First City, and Michael Cash, sole director and shareholder of National Capital Corporation ("NCC"). First City has also submitted the Affidavit of Stephen S. Laine ("Laine"), President of First City, as well as a variety of documents. The following are facts derived from these affidavits and documents and are uncontested, except as noted.

First City and NCC are separate and distinct entities which have never had common shareholders, officers or directors. First City is not a parent, subsidiary or affiliate of NCC. NCC subleases space for its offices from the Bank and has access to the Bank's reception area and conference rooms, for which it pays a monthly rent.

The Notes at issue were "personal investor loans" made to individuals on the basis of statements indicating substantial net worth. NCC, as financial loan broker, assisted the Bank in processing loan applications.

In September, 1985, the Bank entered into an agreement with NCC pursuant to which NCC prepared a loan application package for each defendant which included an application for a personal loan, a supplemental personal financial statement, a borrower's letter (the "Borrower's Letter"), an Engagement Letter (the "Engagement Letter"), and a Note. NCC also collected defendants' financial and credit references, tax returns, and other information. After gathering and analyzing the documents, NCC forwarded to the Bank the applications and information on the potential borrowers. The Bank then individually evaluated the credit worthiness of each defendant, and based upon the evaluations, approved defendants' applications for personal loans.

After the Bank approved the loans, the proceeds were disbursed to CESAF, pursuant to the Borrower's Letter signed by each defendant. Pursuant to the Engagement Letter, the Bank was directed by CESAF to pay NCC 5% of the loan proceeds as NCC's fee. This 5% was debited to each defendant's loan and was deposited in NCC's account at the Bank. The Bank and NCC deny that the Bank received any part of NCC's fees, and have submitted copies of deposit slips indicating that NCC's fee was disbursed from the loan proceeds into NCC's account.

Additional facts are set forth by affidavits submitted by the defendants, two of which have been executed, those of Richard Gipe ("Gipe"), a broker-dealer who participated in structuring CESAF, and Terry Foster ("Foster"), a limited partner in CESAF, an associate of Gipe, and a defendant in this action.[1] The unexecuted affidavit of David Young ("Young"), the assistant of

---

1. The defendants have sued Gipe, Colburn, and others in California State Court charging, *inter* *alia*, fraud, negligent misrepresentation, breach of fiduciary duty and securities violations.

Charles Colburn ("Colburn"), the principal of Colburn Energy Corporation, Inc., will not be considered for the purposes of deciding this motion. *See* Fed.R.Civ.P. 56(e); *Adickes v. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608 n. 17, 26 L.Ed.2d 142 (1970); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980); *Oglesby v. Terminal Transport Co., Inc.*, 543 F.2d 1111, 1112 (5th Cir.1976).[2]

Colburn initiated the preparation of a Private Placement Memorandum ("PPM") for the solicitation of funds to be used in oil and gas investment. The original structure of the Partnership, which became CE-SAF, anticipated that the Partnership would borrow funds from a financial institution and that the collateral would be the oil and gas assets purchased with the Partnership funds and guaranteed by the investors. Upon presentation of the plan for CESAF to the Bank, the Bank indicated that it would be interested in providing financing, but the structure of the Partnership would have to be changed so that First City would lend to the investors directly.

Once First City approved the program and indicated that it would be interested in soliciting loans to potential investors, Gipe claims that he learned that NCC would gather the loan information, and states: "I was told by Bank and NCC personnel that the Bank and NCC were owned and controlled by the same people and that NCC would package the documentation concerning the loan and the Bank would automatically approve based on NCC's recommendation.... it is my understanding based on personal conversations with Bank and NCC personnel that the Bank and NCC are in fact one and the same." Further, "I was told by Mr. Cash who was represented as an officer of NCC that NCC and the Bank had common ownership and common offices," and "that the purpose of NCC was to procure an amount of compensation that the Bank was not able to receive as a banking institution."

Gipe also states that after the loans were approved by the Bank on behalf of the potential investors solicited for this program, and after all loan documents had been signed, Colburn informed him that the Bank would only agree to fund the loans if Colburn agreed to allow the Bank to retain 15% of the loan proceeds as collateral, and that the Bank required Colburn to guarantee personally up to 25% of the amount borrowed by the investors as a group in order to make the funding of the loans. Finally, in a meeting which Gipe attended with, among others, Colburn, Young, "two Mr. Greenbergs (represented as principals of the Bank)" and Cash, Gipe claims that "the Bank and Colburn acknowledged the Bank policy that when the loans were funded into the Partnership account with the Bank, each investment opportunity must first be presented to and approved by the Bank before the funds leave the Bank." This uncorroborated evidence concerning common interest and control is challenged directly by the Bank.

In his affidavit, Foster claims that he was told by Colburn and Young that the Bank and NCC were "controlled by the same people and should be treated as one in the same," and that Colburn told him that the Bank would be apprised of all investments by the Partnership prior to any funds being expended by the Partnership.

*The Propriety of Summary Judgment*

Summary judgment should be granted where no unresolved factual disputes material to the outcome of the litigation exist. *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir. 1988). Ambiguities must be resolved, and inferences drawn, against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

As seen in the June Opinion, the Bank has established a *prima facie* right to recover on the Notes. 690 F.Supp. at 224.

**2.** The signed affidavits were served on November 4, 1988, one day after the court-imposed deadline of November 3, 1988, and one week after the return date of the Bank's renewed motion for summary judgment.

However, as set forth below, defendants have established the existence of a triable issue of fact concerning their claim of control by First City over the Partnership and its General Partner, which might give rise to a fiduciary duty on the part of First City to exercise due diligence in examining CESAF and its investments. In addition, defendants have established that a material question of fact exists concerning First City's relationship with NCC and the transaction at issue which would serve to defeat First City's claim as a holder in due course. Finally, defendants have established the existence of a triable issue of fact concerning their aiding and abetting claim.

*The Issue of Control*

With respect to many of their allegations of control, defendants have failed to raise an issue of contested material fact. They continue to rely on the fact that the limited partners were required to sign individual investor notes, rather than having the Partnership receive the loan, and on the establishment of the 15% collateral account, the same facts on which they relied in opposing to the Bank's original motion for summary judgment. The June Opinion, in consideration of those facts, concluded:

> The bank's one-time request that loan payments be made directly through the limited partners fails to substantiate defendants' claim that the bank exercised control over the partnership's funds. Similarly, First City retained 15 percent of the proceeds of the loans in a collateral account pursuant to authorization from Colburn Energy who, in turn, had the authority under the Limited Partnership Agreement, signed by each of the limited partners, to take such measures on behalf of the partnership. The bank's retention of this sum as additional security for the loans is not indicative of an uncommonly high degree of involvement in the affairs of the partnership.

690 F.Supp. at 225.

Defendants also rely on the existence of the general partner's 25% guaranty to prove control. However, an attempt to secure a loan made to finance an investment program does not establish control by a bank. *See Schlifke v. Seafirst Corp.*, Fed. Sec.L.Rep. (CCH) ¶ 93,107, at 95,444, 1987 WL 4718 (N.D.Ill. Feb. 20, 1987); *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).

However, there is a triable issue with respect to First City's control over the investments of the Partnership. Gipe claims that the Bank acknowledged at a meeting that Bank policy required that investment opportunities be approved by the Bank before funds left the Bank. Although defendants do not offer evidence of such a policy beyond Gipe's affidavit, despite ample time for discovery, the sworn affidavit is sufficient to raise a triable issue.[3]

*The Relationship Between First City and NCC*

Defendants have also raised a material issue of fact with respect to the relationship between First City and NCC. The affidavits of Greenberg and Cash contend that NCC is not the Bank's "alter ego" and that the only relationship between the Bank and NCC is that of lender and loan broker and tenant and subtenant. However, Gipe in his affidavit claims that Bank personnel told him that the Bank and NCC were the same entity. Although defendants contend that the role of NCC was to permit the Bank to receive undisclosed interest, and although there is no evidence to back up this assertion, Gipe's affidavit raises a triable issue. As seen in the June opinion, if First City and the Bank were "alter egos," First City's status as a holder in due course would be destroyed. *See First City v. Dennis*, 690 F.Supp. at 225–26.

*Aiding and Abetting*

In the June Opinion, defendants' aiding and abetting claim was rejected on the ground that no complaint alleging a primary violation had been filed. Since then, defendants have filed an action in the State

---

**3.** Because the statement described by Gipe constitutes an admission of a party-opponent, it is not hearsay. Fed.R.Evid. 801(d)(2).

Court of California against Colburn, Young and the Bank charging, among other things, violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. These violations allegedly occurred by the negotiation of loans with First City which differed from those represented to the limited partners in the PPM, the negotiation of the 15% collateral account retained by First City and not mentioned in the PPM or disclosed to the limited partners, the alleged policy of the Bank to review investment decisions of the Partnership, the purchasing of investment assets on behalf of the Partnership from entities owned at least in part by Colburn, the purchasing of oil and gas leases that did not exist, and the failure to produce or issue a subsequent PPM to the limited partners describing these changes.

The test for aiding and abetting securities violation under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a) is a showing of: (i) the existence of a securities law violation by the primary party; (ii) knowledge of the violation by the aider and abettor; and (iii) substantial assistance by the aider and abettor in achievement of the primary violation. *IIT, International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980) (citations omitted).

The court has already rejected defendants' argument with respect to the form of the Notes and the 15% collateral account. *First City v. Dennis,* 690 F.Supp. at 225. Furthermore, there is no writing under which the Bank agreed to be bound by the PPM, and defendants have not set forth a basis for an obligation to ensure that the terms of the Notes were consistent with the PPM.

However, if, as described above, the Bank has a fiduciary relationship with the defendants by virtue of its control over the Partnership's investments, it owed defendants a duty to disclose certain of the partnership investments about which the Bank had knowledge. *See Chiarella v. United States,* 445 U.S. 222, 227–28, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348 (1979).[4] Thus, defendants have raised a triable issue with respect to aiding and abetting.

*Conclusion*

Because, based on Gipe's affidavit, defendants have just managed to raise material issues of fact as to control, the relationship between the Bank and NCC, and the aiding and abetting claim, First City's motion for summary judgment is denied.

Discovery will be completed by June 7 and the pretrial order filed June 21, 1989.

It is so ordered.

---

4. If, contrary to the discussion above, the Bank did not control the partnership's investments and did not know of any wrongdoing, the Bank should not be denied holder in due course status by being put on notice of problems in partnership affairs. *See Chemical Bank of Rochester v. Haskell,* 51 N.Y.2d 85, 432 N.Y.S.2d 478, 411 N.E.2d 1339 (1980). In reversing the trial court's order denying summary judgment in *Haskell,* the Court of Appeals stated:

It is unreasonable to expect ... that [the bank] foresee improprieties in the underlying transaction which would later be disclosed. The State's interest in free flow of commercial paper does not tolerate the placing of such a burden on bank's acting in good faith. 432 N.Y.S.2d at 481, 411 N.E.2d at 1342. *See also Cairns v. Renneisen, Renneisen & Redfield,* Fed.Sec.L.Rep. CCH ¶ 93,626, 1987 WL 15427 (E.D.Pa.1987), at 97,839 (absent proof that bank participated in planning and formation of limited partnership, bank had no affirmative duty or obligation to investigate business affairs of the limited partnership).