[615 NYS2d 550]

ADAMAR OF NEW JERSEY, INC., Appellant-Respondent, v CHASE LINCOLN FIRST BANK, N. A., Respondent-Appellant.

Fourth Department, July 15, 1994

### APPEARANCES OF COUNSEL

*Harris, Beach & Wilcox,* Rochester *(Jeffrey W. Baker* of counsel), for appellant-respondent.

*Phillips, Lytle, Hitchcock, Blaine & Huber,* Rochester *(John T. Sullivan, Jr.,* of counsel), for respondent-appellant.

### OPINION OF THE COURT

BOEHM, J.

In this case, we are called upon to determine whether plaintiff is a holder in due course of checks drawn on defendant bank.

I

On January 28, 1988, a loan officer in the Rochester Midtown branch of defendant, Chase Lincoln First Bank, N.A. (Chase), left a customer, Joseph Thomas, alone in the loan officer's office. There were two signed cashier's checks on the loan officer's desk. The date, payee and amount of each check were blank. Thomas took both checks and wrote $200,000 as the amount of one check and $300,000 as the amount of the other check. Both checks were subsequently completed with the name of Thomas's brother-in-law as payee. Posing as his

brother-in-law by using a false temporary New York driver's license, Thomas deposited the $200,000 on January 28, 1988, at plaintiff's Tropicana Casino (Casino) in New Jersey. Thomas lost the entire $200,000 at the Casino's gaming tables that same day. On February 1, 1988, Thomas deposited the $300,000 check at the Casino and received $300,000 in gaming chips. He then lost an additional $169,000 before Chase, on February 2, 1988, stopped payment on both checks. Thereafter, on February 8, 1988, Chase refused to honor the checks and plaintiff commenced this action seeking payment. Following extensive discovery, both parties brought motions for summary judgment, which Supreme Court denied.

## II

■ Although our reasoning differs, Supreme Court properly applied the law of New York in determining that the Casino was a holder in due course. Under both New Jersey and New York law, a holder in due course is a holder who takes the instrument for value and in good faith and "without notice * * * of any defense against or claim to it on the part of any person" (NJ Stat Annot § 12A:3-302 [1] [c]; UCC 3-302). The Uniform Commercial Code adopted in New York includes language that the New Jersey statute lacks, i.e., "to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith" (UCC 3-304 [7]). The absence of that language in the Uniform Commercial Code of New Jersey does not, however, affect the similarity of the requirements for holder in due course status in both States. In determining whether a holder has taken the instrument in good faith, both New Jersey and New York law combine a subjective inquiry into what the holder actually knew with an objective inquiry into whether a person with that knowledge would have accepted the instrument, i.e., whether the holder consciously ignored facts that would have put him or her on notice of a claim or defense *(Hartford Acc. & Indem. Co. v American Express Co.,* 74 NY2d 153; *Chemical Bank v Haskell,* 51 NY2d 85; *General Inv. Corp. v Angelini,* 58 NJ 396, 278 A2d 193; *Citizens Natl. Bank v Fort Lee Sav. & Loan Assn.,* 89 NJ Super 43, 213 A2d 315). Moreover, we agree with the court that, if there were a conflict between the New York and New Jersey Uniform Commercial Codes, New York's law would apply because New York is the "place where the bank is located" (UCC 4-102 [2]).

## III

■ The dispositive question is whether plaintiff had "knowledge of some fact which would prevent a commercially honest individual from taking up the instruments" *(Chemical Bank v Haskell, supra,* at 92). With respect to what knowledge is required to amount to bad faith on the part of a holder of an instrument that would deprive it of the status of a holder in due course, the Court of Appeals has established the rule as follows: "Holders in due course are to be determined by the simple test of what they actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances" *(Hartford Acc. & Indem. Co. v American Express Co., supra,* at 163). Thus, "[p]arties who take commercial paper for value ' "[are] not bound at [their] peril to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance" ' [citations omitted]" *(Hartford Acc. & Indem. Co. v American Express Co., supra,* at 163).

Here, there are no issues of fact that would affect plaintiff's status as a holder in due course. Contrary to Chase's contentions, the Casino did not violate the New Jersey gaming regulations *(see,* NJ Administrative Code § 19:45-1.25 [e]) or its own internal procedures in verifying Thomas's identity or the validity of the checks. New Jersey's gaming regulations do not require any particular form of identification, nor that the driver's license used by Thomas as identification be a permanent license, nor that it contain a photograph. Likewise, there is no regulatory requirement that a gaming casino check its records to determine a patron's identity after the patron has presented identification. Nor do the applicable regulations require gaming casinos to inquire whether there are "stop payments" on cashier's checks. The statement by a Chase employee in response to inquiries from the Casino that the $200,000 check was "good" and that there were adequate funds to cover it, satisfied the requirement of New Jersey Administrative Code § 19:45-1.25 (e) that, "[p]rior to acceptance of any cash equivalent from a patron, the general cashier shall determine the validity of such cash equivalent by performing the necessary verification for each type of cash equivalent and such other procedures as may be required by the issuer of such cash equivalent." Additionally, the Casino was expressly informed that there was no stop payment on the $300,000 check. Finally, the misspelling of the brother-in-

law's name on the $200,000 check did not constitute "irregularities of such magnitude as to put a holder on notice that something was 'wrong' " *(Hartford Acc. & Indem. Co. v American Express Co., supra,* at 161).

Because the circumstances surrounding the Casino's acceptance of the checks did not amount to bad faith, the Casino, as a holder in due course, is entitled to payment and should have been granted summary judgment *(see, Hartford Acc. & Indem. Co. v American Express Co., supra; Chemical Bank v Haskell, supra).*

## IV

We reject Chase's contention that the Casino could not be a holder in due course because the checks were "forged". Chase's own negligence precludes Chase from asserting the forgery defense afforded by Uniform Commercial Code § 3-404 (1) *(see,* UCC 3-406).

Finally, we have reviewed Chase's other contentions and find them to be without merit.

Accordingly, the order of Supreme Court should be modified by granting plaintiff's motion for summary judgment.

GREEN, J. P., BALIO, LAWTON and WESLEY, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by BOEHM, J.